IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
JUANITA PERKINS,                )
                                )
           Plaintiff,           )
                                )       1:15CV836
     v.                         )
                                )
OCWEN LOAN SERVICING, LLC,      )
                                )
           Defendant.           )
```

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Presently before the court is a Motion to Remand to State Court filed by Plaintiff Juanita C. Perkins ("Plaintiff"). (Doc. 6.) Defendant Ocwen Loan Servicing, LLC, ("Defendant") has responded, (Doc. 9), and Plaintiff has replied. (Doc. 10.) This matter is now ripe for resolution and, for the reasons stated herein, Plaintiff's motion will be denied.

I.  **BACKGROUND**

Plaintiff purchased a home located in Durham, North Carolina that was financed with a loan serviced by Defendant. (Complaint ("Compl.") (Doc. 3) ¶¶ 4-6.) In late January 2014, Plaintiff entered into a loan modification agreement with Defendant that included a provision whereby Plaintiff was to make an escrow payment each month that would include "amounts due for (i) yearly taxes and assessments which may attain

priority over the Security Instrument as a lien on the property, and (ii) yearly hazard or property insurance premiums." (Id. ¶¶ 9-12.) One of the yearly assessments included as part of the escrow payment was the homeowner's association ("HOA") fee for Plaintiff's HOA. (Id. ¶¶ 12-13.)

According to Plaintiff, Defendant represented to her that it would pay the HOA fee on her behalf out of the escrow fund. (Id. ¶ 14.) Plaintiff alleges that, despite these assurances, Defendant negligently failed to pay the fee, resulting in the HOA filing a claim of lien against Plaintiff's home. (Id. ¶¶ 20-21.) After the HOA began foreclosure proceedings, Plaintiff informed Defendant of the situation and Defendant assured Plaintiff that it would resolve the issue. (Id. ¶¶ 23, 27-29.) Defendant allegedly sent a check for the amount owed to the wrong address, resulting in Plaintiff's home being foreclosed on and sold at the foreclosure sale for $3,894.00. (Id. ¶¶ 32-34.)

Plaintiff brought suit in Durham County Superior Court on January 29, 2015, alleging damages "in excess of $25,000," as required by North Carolina Rule of Civil Procedure 8(a)(2). (See Compl. (Doc. 3) at 1, 9-10); see also N.C. Gen. Stat. § 1A-1, Rule 8(a)(2). The parties apparently began settlement discussions and, on September 8, 2015, Plaintiff's attorney sent

-2-

an email to Defendant stating that she would make an initial demand of "around $300,000" and that she sought "to settle th[e] case in the low six figures." (See Declaration of James White ("White Decl."), Ex. 4, September Email (Doc. 8-4).) Defendant filed a Notice of Removal based on diversity jurisdiction on October 7, 2015, twenty-nine days after receipt of that email. (See id.; Notice of Removal (Doc. 1).) Plaintiff then filed the instant motion.

**II. ANALYSIS**

Under 28 U.S.C. § 1441, a party generally may remove an action to federal court if the requirements for diversity jurisdiction, codified in 28 U.S.C. § 1332(a), are met. See 28 U.S.C. § 1441(a)-(b). The removing party must file a notice of removal within thirty days of receipt of the pleading that sets forth the grounds for removal. 28 U.S.C. § 1446(b). However, if the case as stated by the initial pleading is not removable, a notice of removal may be filed within thirty days of receipt by the defendant "of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Id.

The primary basis for Plaintiff's motion is that Defendant's removal was not timely made under 28 U.S.C. § 1446. Neither party disputes that the case was not removed within

thirty days of receipt of the Complaint. Nor does either party dispute that diversity jurisdiction is in fact present in this case. Rather, the parties' dispute centers around whether the Complaint alleged facts sufficient to put Defendant on notice that the case was removable or whether the September 8th email was Defendant's first notice of the basis for removal.

### A. The Complaint

Plaintiff contends that, although the Complaint only alleges damages generally "in excess of $25,000" (Compl. (Doc. 3) at 9), it was clear from the facts of the case as alleged that the damages sought exceed the required jurisdictional amount. (See Mem. of Law in Supp. of Mot. to Remand ("Pl.'s Mem.") (Doc. 7) at 4-7.)

Plaintiff argues that, when the amount of damages a Plaintiff seeks is unclear, the court may look to the entire record to determine whether jurisdiction exists. (Id. at 4 (citations omitted).) It is true that the court may look at the entire record when it undertakes the task of determining whether a removing party has met its burden of proving the amount in controversy requirement has been met for diversity jurisdiction. See, e.g., Dash v. FirstPlus Home Loan Owner Trust 1996-2, 248 F. Supp. 2d 489, 496-98 (M.D.N.C. 2003). However, as noted above, neither party disputes that diversity jurisdiction in

fact exists, and as such, an examination of the entire record is unnecessary.

Instead, the relevant question here is whether the Complaint provided sufficient notice of the grounds for removal such that the thirty-day clock began to run pursuant to 28 U.S.C. 1446(b).

The Fourth Circuit has adopted the rule that "the grounds for removal must appear on the face of the initial pleading in order for the 30-day clock . . . to begin to run." Lovern v. Gen. Motors Corp., 121 F.3d 160, 162-63 (4th Cir. 1997) (emphasis added). Other circuits have adopted similar bright-line rules, requiring an unambiguous specification of damages that satisfy the jurisdictional requirement in order to trigger the thirty-day clock. See, e.g., Walker v. Trailer Transit, Inc., 727 F.3d 819, 825 (7th Cir. 2013) (holding that the thirty-day clock is triggered only when there is "specific and unambiguous notice that the case satisfies federal jurisdictional requirements"); Moltner v. Starbucks Coffee Co., 624 F.3d 34, 38 (2d Cir. 2010) ("[T]he removal clock does not start to run until the plaintiff serves the defendant with a paper that explicitly specifies the amount of monetary damages sought."); Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998).

There are two sources in the Complaint that may constitute possible notice of a basis for removal jurisdiction. First is the ad damnum clause itself. The Complaint demands in excess of $25,000 for negligence and breach of contract and in excess of $25,000 for negligent infliction of emotional distress, resulting in claimed compensatory damages in excess of $50,000. (See Compl. (Doc. 3) ¶¶ 49, 58, 69, 75; see also Pl.'s Mem. (Doc. 7) at 5.) The Complaint also demands unquantified punitive damages. (Compl. (Doc. 3) at 9.) When these demands are taken together, according to Plaintiff, it can be "reasonably infer[red]" that the amount demanded would exceed $75,000. (Pl.'s Mem. (Doc. 7) at 5-6.) As noted above, this is not the standard and what the court can reasonably infer is not relevant to this inquiry. The Second Circuit in Moltner rejected this exact argument, holding, despite a contention that by "applying a reasonable amount of intelligence," the defendant could have "deduced from the complaint[] . . . that the amount in controversy" requirement was met, that notice had not been provided. 624 F.3d at 37-38. The Second Circuit held that it would not "[r]equir[e] a defendant to read the complaint and guess the amount of damages that the plaintiff seeks[,]" because such a requirement would "create uncertainty and risk[] increasing the time and money spent on litigation." Id. at 38.

This court agrees and will not require a defendant to guess at the amount of damages requested and base its choice to remove on that guess. As such, the ad damnum clause does not provide enough detail to trigger the thirty-day clock.

Alternatively, the Complaint alleges that Plaintiff was damaged by the loss of her home. (Compl. (Doc. 3) ¶¶ 48, 57.) However, these allegations also do not contain sufficient detail to trigger the thirty-day clock. The Complaint contains no specific facts indicating the dollar value of the loss of her home or that such damages exceeded $75,000 and, as such, is insufficient to trigger the thirty-day clock under Fourth Circuit precedent. See Lovern, 121 F.3d at 162 (holding that the grounds for removal must "be apparent within the four corners of the initial pleading . . ."). Plaintiff contends that Defendant was aware that the value of her home exceeded $75,000, by virtue of either Defendant's knowledge of the tax value of her home or an appraisal commissioned by Defendant valuing the home at $155,000. (See White Decl., Ex. 1, Tax Card (Doc. 8-1); Ex. 2, Ocwen's Appraisal (Doc. 8-2).) However, these documents and the dollar values that they assign to the home are not contained in the four corners of the Complaint and, as such, this court cannot consider them for purposes of this inquiry. See Lovern, 121 F.3d at 162 ("[W]e will not require courts to inquire into

-7-

the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when.").

Thus, this court finds that the Complaint does not contain allegations sufficient put Defendant on notice that the jurisdictional amount was met and thus did not trigger the thirty-day clock for notice of removal.

**B.    The June Settlement Demand**

Plaintiff also alleges that, even if the Complaint does not contain a sufficient demand, she made a demand of $100,000 on or about July 6, 2015, thus triggering the thirty-day clock for notice of removal at that time. (See White Decl. (Doc. 8) ¶ 6.) This offer was apparently communicated to Defendant's counsel via telephone, and Plaintiff rejected Defendant's counteroffer, to deed her house back to her, in writing on July 8, 2015. (See White Decl., Ex. 3, July Email (Doc 8-3).)

Such a demand is insufficient to trigger the thirty-day clock because oral settlement discussions do not constitute an "other paper" for purposes of 28 U.S.C. § 1446(b). Thomas v. Ritter, 3:98CV530-H, 1999 WL 1940047, at *2 (W.D.N.C. Feb. 11 1999) (holding that "mere oral notice of the amount in controversy" does not trigger the thirty-day clock). In Ritter, the court was faced with the exact problem presented here: a

-8-

Complaint that did not allege readily determinable damages and a settlement demand communicated via telephone. Id. at *1-2. In holding that the thirty-day clock had not been triggered, the court explained that allowing oral communications to establish the jurisdictional requirements "would present enormous proof problems, and potentially require an evidentiary hearing on every notice of removal and motion for remand." Id. at *2. This holding is consistent with the holdings of other courts. See, e.g., State Farm Fire & Cas. Co. v. Valspar Corp., 824 F. Supp. 2d 923, 932-38 (D.S.D. 2010); Smith v. Bally's Holiday, 843 F. Supp. 1451, 1453-56 (N.D. Ga. 1994).

As such, the July settlement demand did not trigger the thirty-day clock, and this court thus finds that the first other paper that Defendant received putting it on notice that the case could be removed was the September 8, 2015 email, rendering Defendant's notice of removal timely.[1]

**C.  Waiver**

Alternatively, Plaintiff claims that, even if the September email was the first notice of the amount in controversy that

---

[1] To the extent that the email from Plaintiff rejecting Defendant's counteroffer constitutes an "other paper" for purposes of the statute, that email contains no reference to a specific dollar amount contemplated for settlement and thus provides no notice. (See White Decl., Ex. 4, September Email (Doc. 8-4).)

-9-

Defendant received, Defendant waived its right to remove by participating in a state court mediation after it received notice. (See Pl.'s Mem. (Doc. 7) at 7-9.)

The Fourth Circuit has followed the Seventh Circuit in holding that, after the passage of 28 U.S.C. § 1446(b), "there was no further need for the waiver doctrine[.]" Grubb v. Donegal Mut. Ins. Co., 935 F.2d 57, 58-59 (4th Cir. 1991) (citation omitted). Although the court in Grubb noted that district courts retain the power to remand in certain cases, waiver of the right to remove a case "should only be found in 'extreme situations.'" Id. at 59. "[T]he values of judicial economy, fairness, convenience and comity . . . . may justify the application of the common law doctrine of waiver." Id. (citation omitted). In order to make this determination, the court must make a "factual and objective inquiry . . . [into] the defendant's intent to waive[.]" Id.

This court finds that an extreme situation that can justify a remand on grounds of waiver is not present on the facts of this case. Plaintiff has pointed to no precedent in the Fourth Circuit holding that participating in a court-ordered mediation session before filing for removal constitutes waiver, and this court can find no precedent to support that contention either. The mediation session at issue was ordered and scheduled by the

state court before the email containing the $300,000 demand was received, and Defendant filed no substantive documents in the state court case or otherwise invoked the state court's jurisdiction once it became aware that the case was removable. Participation in that lone session does not, by itself, evidence a clear and unequivocal intention to proceed in state court. As Defendant notes, such participation just as easily evidences a last-ditch effort to resolve the case without proceeding in court at all. The cases cited by Plaintiff support a finding of no waiver. For example, Defendant's decision does not show the same level of intent to remain in state court as did filing a substantive counter claim, as in <u>Virginia Beach Resort & Conference Center Hotel Ass'n Condominium v. Certain Interested Underwriters at Lloyd's, London Subscribing to Certificate No. AS65009VAP00047</u>, 812 F. Supp. 2d 762, 765-66 (E.D. Va. 2011). The facts of this case are instead closer to those of <u>Pigg v. Progressive Casualty Insurance Co.</u>, No. 3:06 CV 125-H, 2006 WL 1789145 (W.D.N.C. June 27, 2006), where the court found that a motion for an extension of time filed after notice was received did "not demonstrate a clear and unequivocal intent to remain in state court[.]" <u>Id.</u> at *5. This court therefore finds that Defendant did not waive its right to remove the case to federal

-11-

Case 1:15-cv-00836-WO-JLW   Document 12   Filed 08/16/16   Page 11 of 12

court by participating in a court-ordered mediation session after it became aware that the case was removable.

Finally, because this court denies Plaintiff's motion to remand, it lacks any basis on which to award attorney fees and Plaintiff's request for attorney fees will thus be denied.

## III. CONCLUSION

For the reasons stated above, **IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand to State Court (Doc. 6) is **DENIED**.

This the 16th day of August, 2016.

/s/ William L. Osteen, Jr.
United States District Judge